UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 22-CR-80173-AMC-3

UNITED STATES OF AMERICA

    Plaintiff,

v.

MATTHEW BRANDEN GARRELL

    Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A REASONABLE SENTENCE (UNDER SEAL)**

Defendant, Matthew Branden Garrell ("Mr. Garrell"), by and through undersigned counsel, hereby files this Sentencing Memorandum and moves this Court pursuant to 18 U.S.C. § 3553(a) to impose a reasonable sentence, all facts and circumstances considered.

## I. INTRODUCTION

Given the mitigating factors set forth herein, Mr. Garrell respectfully requests that this Court impose a reasonable sentence below the advisory guideline range recommended by United States Probation in the Draft Presentence Investigation Report ("PSR"). Such a sentence would be sufficient–but not greater than necessary–to satisfy the factors outlined in 18 U.S.C. § 3553(a). See Kimbrough v. United States, 552 U.S. 85, 101 (2007). Except for the improper conduct at issue here, Mr. Garrell has led an exemplary and law-abiding life. Mr. Garrell's early acceptance of responsibility, significant cooperation with the Government, low risk of recidivism, unique family circumstances, the public and private embarrassment of a felony

conviction, and the negative impact same will have on Mr. Garrell for the remainder of his life, all provide ample justification for the Court to impose a below-guideline sentence.

## II. PROCEDURAL HISTORY

1. On February 16, 2023, Mr. Garrell was charged in a Second Superseding Indictment with one (1) count of conspiracy to advertise child pornography in violation of 18 U.S.C. § 2251(d) and (e) (Count One), and one (1) count of conspiracy to distribute child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Count Two). (DE 38).

2. On May 3, 2023, Mr. Garrell pled guilty to Count One and Count Two of the Second Superseding Indictment. (DE 108).

3. Sentencing is set for August 23, 2023, at 2:30PM. (DE 153).

## III. ADVISORY GUIDELINES CALCULATIONS

### A. UNCONTESTED GUIDELINES PROVISIONS

U.S.S.G. §2G2.2 is the applicable guideline for violations of 18 U.S.C. § 2251(d) and 18 U.S.C. §2252A(a)(2). The base offense level is twenty-two (22). Mr. Garrell does not object to the following enhancements:

1. a two (2) level increase since the material involved a prepubescent minor or a minor who had not reached the age of 12 years pursuant to §2G2.2(b)(2). See PSR at ¶ 99. (DE 152);

2. a four (4) level increase since the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual

   abuse or exploitation of an infant or toddler pursuant to §2G2.2(b)(4). See PSR at ¶ 101;

3. a two (2) level increase since the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material pursuant to §2G2.2(b)(6). See PSR at ¶102; and

4. a five (5) level increase since the offense involved 600 or more images pursuant to §2G2.2(b)(7)(D). See PSR at ¶ 103.

Pursuant to the Plea Agreement, the offense level should be reduced by two (2) points for acceptance of responsibility under U.S.S.G. §3E1.1(a). See Plea Agreement at ¶ 11. (DE 110). The Government has also agreed to file a motion requesting an additional one (1) level decrease pursuant to § 3E1.1(b), stating that Mr. Garrell has assisted authorities in the investigation and prosecution of his misconduct by timely notifying authorities of his intention to enter a plea of guilty. Id.

   **B. CONTESTED GUIDELINES PROVISIONS**

Mr. Garrell objects to the recommended three (3) level enhancement based on his role in the offense under U.S.S.G. §3B1.1(b). See PSR at ¶ 105. Relative to co-defendants (and related defendants charged separately), the degree of culpability of Defendant Garrell and Defendant Garrell's role in the instant conduct is significantly less.

Specifically, this Court imposed only a three-level enhancement for the second-highest ranking administrator of Website A, Selwyn Rosenstein, despite the fact that his PSR recommended a four-level enhancement. See PSR at ¶ 85. Defendant Rosenstein had authority to promote users and reset user passwords, and assisted with server and technical issues

3

experienced on the site. Defendant Rosenstein was one of the four highest-ranking members of Website A, who met regularly to discuss its organization and management. Similarly, Defendant Gregory Good is recommended to receive a three-level enhancement. See PSR at ¶ 86. Defendant Good was another administrator of Website A with access to "staff meetings" restricted to 10 to 12 of the highest-ranking members. Defendant Good participated in those staff meetings, donated money to Website A, recommended users for promotions, and recruited users to serve as room moderators.

In contrast, Defendant Garrell had no decision-making authority within Website A. He could not attend staff meetings, did not participate in the planning, organizing, or management of the site, could not recruit or promote users, and had no significant control over, and/or authority over other users. Therefore, an enhancement under U.S.S.G. §3B1.1 is inappropriate for Defendant Garrell.

Mr. Garrell also objects to the five (5) level enhancement under U.S.S.G. §2G2.2(b)(3)(B). See PSR at ¶ 100. The 2016 amendment to this Guideline "altered the meaning of the Guideline by replacing the phrase 'for the receipt, or expectation of receipt' with the phrase 'in exchange for,'" and therefore narrowed its application. United States v. Morehouse, 34 F.4th 381, 391 (11th Cir. 2022) (holding that a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) was error because "the Government failed to show that defendant made any type of agreement with a specific person"). The Court in Morehouse established the following four-part test to determine the application of a §2G2.2(b)(3)(B) enhancement after the 2016 amendment: "the Government must how that the defendant (1) agreed . . . to an exchange with another person under which (2) the defendant knowingly distributed child pornography to that other person (3) for the specific purpose of obtaining something of valuable consideration (4)

4

from that same other person." Id. at 391 (internal quotations omitted). Simply put, after the 2016 amendment, this "enhancement can only apply to a two-sided exchange." Id.

Other circuits are in agreement. See United States v. Oliver, 919 F.3d 393, 401 (6th Cir. 2019) (finding that "exchange" under the amended Guideline "at the very least, requires an agreement or mutual understanding between two parties."); United States v. Halverson, 897 F.3d 645, 651-52 (5th Cir. 2018) (reversing the district court's application of a five-level enhancement and finding that the amended Guideline "requires a court to find" that "the defendant agreed to an exchange with another person.").

Here, Defendant Garrell did not agree to an "exchange" of explicit material with another person for the specific purpose of obtaining any valuable consideration from that person. Further, participation in Website A did not generally involve an "exchange" relationship. Sharing material was not necessary in order to access material shared by others, and sharing alone would not directly result in access to additional material or preferential access to material. There was no two-sided exchange. Thus, a five-level enhancement does not apply and only a two (2) level enhancement is warranted. U.S.S.G. §2G2.2(b)(3)(F).

C. **TOTAL OFFENSE LEVEL**

Mr. Garrell submits that his adjusted offense level should be thirty-seven (37) and his total offense level should be thirty-four (34). A total offense level of thirty-four (34) and a criminal history category I yields a guidelines imprisonment range of 151 to 188 months imprisonment. Because this range includes a period of imprisonment below the applicable mandatory minimum sentence, the resulting advisory guidelines range should be 180 to 188 months imprisonment. See U.S.S.G. §5G1.1(b). This guideline range represents a reasonable sentence.

5

If the Court overrules Mr. Garrell's objections and adopts the recommendations included in the PSI Report, a total offense level of forty (40) and criminal history category of I produces an advisory sentencing guideline range of two hundred and ninety-two (292) to three hundred and sixty-five (365) months. However, several mitigating factors detailed below support a lower, more reasonable sentence than one within this guideline range.

## IV. REQUEST FOR A REASONABLE SENTENCE

As this Court is well aware, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (a district judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented."**). Consideration of the Guidelines is only "the starting point and the initial benchmark" in the Court's overall analysis. Id. at 49. In fact, "district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing" under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider:

6

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to—

    (A)    reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

    (B)    provide adequate deterrence to criminal conduct;

    (C)    protect the public from future crimes of the defendant; and

    (D)    provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

    *    *    *    *

(5) any pertinent policy statement—

    *    *    *    *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

      Mr. Garrell respectfully asks this Court to look beyond the advisory sentencing guideline range recommended by the PSR, focus on the principles pronounced by the United States

Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose a reasonable sentence.

## A. MITIGATING FACTORS

### 1. THE HISTORY AND CHARACTERISTICS OF MATTHEW BRANDEN GARRELL

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guideline calculation; indeed, the guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39, 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into account the personal characteristics of the defendant); United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the federal sentencing guideline calculations by considering the history and characteristics of Mr. Garrell that weigh in favor of a below-guidelines sentence.

8

Matthew Branden Garrell was born on March 31, 1987 in Idaho Falls, Idaho. His parents, Robert and Karen Garrell, have been married for nearly 40 years. Matthew is the oldest of two boys; his brother Travis is three years his junior. The Garrell family relocated frequently during Matthew's childhood until his father retired from the United States Navy after 20 years of military service. At the age of fourteen, Matthew had moved seven times, in each instance to a different state. This was especially difficult for Matthew, who has always felt socially awkward and had difficulty connecting with others. Matthew spent a lot of time at home watching movies and playing video games. Nonetheless, his childhood home was loving, clean, and safe, with a strong connection to the Church of Christ faith. He did well in school, developed a consistent work history, and stayed out of trouble. In fact, Matthew had not had so much as a speeding ticket before he was arrested on the instant charges.

Although he did well academically, Matthew continued to struggle socially in college at North Carolina State University. As friends and family have described, Matthew found it difficult to find a social group where he felt he could fit in. See Character Letters of Mary B. Smith, L. Chris Benson; and WIlliam Y. Yinger, attached to Defendant's Notice of Filing Letters of Support, filed separately. Also in college, Matthew first sought professional help with his mental health. During his senior year, Matthew began to experience sadness, fatigue, lack of motivation, and difficulties with focus and concentration. He was diagnosed with Major Depressive Disorder and prescribed an antidepressant. After about a year and a half on medication, including six or seven months of outpatient counseling, his symptoms resolved. Matthew graduated from NC State with a Bachelor of Arts in psychology and soon after enrolled in Lipscomb University in Nashville, Tennessee in pursuit of a master's degree in clinical counseling. Sadly, Matthew was unable to secure a necessary internship in order to complete his master's. Despite doing well in

his classes and being selected for interviews, Matthew lacked the ability to connect socially and therefore was not ultimately selected for any internship to which he applied. He opted to drop out and pursue employment instead, relying on his prior experience as a technical writer for a software company to find another job in that field. He accepted a job with Equifax, and moved to Atlanta, Georgia.

In 2019, Matthew's anxiety again rose to a level that required treatment, and he began weekly counseling. At that time, Matthew was diagnosed with Generalized Anxiety Disorder and prescribed medication, which he terminated within a few days due to difficult side effects. Though he found counseling beneficial, Matthew ended treatment in Atlanta after he quit his job in order to move back to North Carolina and live with his parents. The third time Matthew's anxiety impacted his life to such a degree that he sought treatment was a few weeks prior to his arrest on February 2, 2023. He took an extended medical leave of absence from work, made plans to move in with his parents, went on medication, and began weekly, outpatient counseling.

Matthew has no children. He has never been married or shared a residence with a romantic partner. He has had only one significant dating relationship, which began in graduate school and continued "off-and-on" for years thereafter. Nonetheless, Matthew has significant support from his family and family friends. This Court will likely hear from two witnesses at the sentencing hearing, including his father, Robert Garrell. His mother, brother, and four family friends have written character letters for this Court's consideration. See Character Letters of Mary B. Smith, L. Chris Benson, WIlliam Y. Yinger, Donald Keefer, Travis Garrell, Karen Garrell, attached to Defendant's Notice of Filing Letters of Support, filed separately.

We implore this Court not to solely define Matthew by the conduct at issue here. Matthew is a son, a brother, a friend, a neighbor, and most importantly, a human being. Like all

human beings, he made a serious mistake – one that has cost him invaluable time with his loved ones, and most importantly, his liberty. In its remarks on the effect of incarceration on first-time, nonviolent offenders, the First Circuit in Prosperi recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

686 F.3d at 48.

Matthew urges the Court to take his personal characteristics and life history into account when dispensing his sentence.

### 2. MR. GARRELL'S EARLY ACCEPTANCE OF RESPONSIBILITY AND COOPERATION

One of the goals of sentencing is rehabilitation. See Williams v. New York, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir.1981).

Furthermore, "[a] sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a §5K1.1 motion"). United States v. Robinson, 741 F.3d 588 (5th Cir. 2014); see also United States v. Landrón-Class, 696 F.3d 62 (1st Cir. 2012); United States v. Massey, 663 F.3d 852 (6th Cir. 2011); United States v. Leiskunas, 656 F.3d 732 (7th Cir. 2011); United States v. Doe, 398 F.3d 1254 (10th Cir. 2005).

Unlike defendants who never acknowledge their wrongful behavior, Mr. Garrell promptly accepted responsibility for the conduct at issue here during his first interaction with law enforcement. He has openly and honestly disclosed information relating to the offense of his conviction. Mr. Garrell understands there is no excuse for his conduct, but he hopes that the Court sees he is truly remorseful for what he has done.

Mr. Garrell's cooperation and complete acceptance of responsibility for his actions weigh in favor of this Court granting a downward departure or variance below the advisory guideline range, should this Court accept the PSR's recommendation. See Roberts v. United States, 445 U.S. 552, 558 (1980) (stating a defendant's cooperation demonstrates that the defendant "will transgress no more…respond to rehabilitative efforts…[and] not deem himself at war with his society.")

**3. THE CHILD PORNOGRAPHY GUIDELINE WAS NOT DEVELOPED USING AN EMPIRICAL APPROACH**

District Courts around the country and the Federal Sentencing Commission have recognized that U.S.S.G. §2G2.2 "is a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." See United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010).

In June 2021, The Federal Sentencing Commission published a report detailing its extensive analysis of trends in the prosecution and sentencing outcomes of defendants charged with non-production child pornography offenses. See "Federal Sentencing of Child Pornography: Non-Production Offenses," United States Sentencing Commission (June 2021).[1]

---

[1] Available at: https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

The Commission found that, due to lengthy sentences defendants received under this guideline, "there had been a steady increase in the percentage of sentences imposed below the applicable guideline range in non-production child pornography cases, which indicated that courts increasingly believed the sentencing scheme for such offenders was overly severe." Id. at 1.

Of particular concern are the various enhancements under U.S.S.G. §2G2.2, which, due to advancements in technology, are routinely applied to most non-production child pornography offenders, despite being reserved for only the most serious child pornography offenses. The Sentencing Commission has expressed that:

> §2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.
>
> For example, in fiscal year 2019, over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12).

Id. at 4; see also United States v. Beiermann, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009) ("because the level enhancements, some quite extreme, are based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images (made particularly easy by the internet); presence of video clips counted as 75 images each; presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act); and some "distributing" in return for other images…This guideline, thus,

blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment").

Mr. Garrell asks that the Court take into account these aforementioned, structural deficiencies in the various enhancements contained within U.S.S.G. §2G2.2 when fashioning an appropriate sentence in his case.

### 4. DETERRENCE DOES NOT REQUIRE A LENGTHY TERM OF INCARCERATION

A lengthy term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[2]

In addition to the punishment imposed by this Court, Matthew will bear the consequences of this conviction for the rest of his life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant"). In light of these considerations, Mr. Garrell submits that a term of imprisonment longer than the applicable mandatory minimum is unnecessary to deter him from committing further crimes and will permit him to receive the mental health treatment he requires.

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

### 5. MR. GARREL'S LOW RISK OF RECIDIVISM

On May 23, 2023, at the suggestion of counsel, Mr. Garrell underwent a psychosexual evaluation performed by Dr. Eric Imhof, a clinical psychologist. Following the administration of several psychological examinations, Dr. Imhof determined, inter alia, that Matthew "does not possess clinically significant characteristics of psychopathy," and is "a low risk to commit future sexual offenses, either a contact or possession of child sexual exploitation material offense." See Psychological Evaluation and Risk Assessment, filed separately under seal, at p. 4, 6. Specifically, Matthew's "history most closely resembles that of the pornography possession only offender. The associated risk to commit a future contact sexual offense is considered to be between 0.5% and 3.6%, a non-contact sexual offense between 1.5% and 5.3%, and a child pornography offense between 2.3% to 7.0% between approximately six to ten years." Id. at p. 6.

Dr. Imhof found it important to note that "there is not empirical evidence to suggest that the duration of viewing/collecting pornographic depictions of minors, the number of images possessed by an individual, or the type of image (e. g., penetration of a child under the age of twelve, sadism/masochism, bestiality, anime, etc.) is associated with increased risk for the commission of future offenses, either future possession of child sexual exploitation material or contact offenses." Id. at p. 6-7.

For Matthew, Dr. Imhof recommended that "[i]nterventions should also address his history of depression and anxiety with consultation for psychopharmacological management of these symptoms and counseling as these are likely contributing factors to the offense behavior." Matthew acknowledges that he used sex as a coping mechanism for negative mood states of loneliness, sadness, and anxiety. Significantly, because Matthew's "interest is not exclusive to prepubescent aged individuals as he has objectively assessed interest in adult females as well as

reported behaviors with age-appropriate adult females" he is more likely to experience a better prognosis for rehabilitation through appropriate treatment. Id. at p. 7.

In sum, Dr. Imhof concluded that Matthew "will present a low risk for future offending and as a low risk to the community" and further "presents as amenable to treatment based on his prior engagement with mental health services and current expressed commitment to remediating his inappropriate sexual behavior" with dynamic factors that provide a high likelihood of success. Id.

## V. CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). Mr. Garrell respectfully requests that the Court impose a sentence of 180 months, which would be sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a) and permit him a second chance at life.

Respectfully submitted,

**HUBBARD LAW FIRM PLLC**
Lead Counsel for Defendant
150 Fayetteville Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 961-4262
Facsimile: (919) 930-8544
meredith@hubbardlawnc.com

By: s/Meredith Woods Hubbard
MEREDITH WOODS HUBBARD
North Carolina Bar # 38599
South Carolina Bar #78539
*Admitted Pro Hac Vice*

                                         **GRAYROBINSON, P.A.**
                                         Local Counsel for Defendant
                                         333 SE 2nd Avenue, Suite 3200
                                         Miami, Florida 33131
                                         Telephone: (305) 416-6880
                                         Facsimile: (305) 416-6887
                                         alek.ubieta@gray-robinson.com

                                         By:     <u>s/Alek Ubieta</u>
                                                     ALEK UBIETA
                                                     Florida Bar #1039546

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Alek Ubieta
ALEK UBIETA, ESQ.
